Anthony OVERMAN, Plaintiff,

v.

UNIVERSAL CITY STUDIOS, INC., a
corporation, and Richard Pryor,
Defendants.

No. CV 82–3604–PAR.

United States District Court,
C.D. California.

April 26, 1984.

Theodore Nunes, Beverly Hills, Cal., for plaintiff.

Edward A. Ruttenberg, Youngman, Hungate & Leopold, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

RYMER, District Judge.

This is an action for copyright infringement and fraud brought by the author of a 1977 screenplay entitled "Easy Money" against the producers of the movie, "Bustin' Loose." "Bustin' Loose" starred Richard Pryor and plaintiff contends his screenplay was written with Pryor in mind. The complaint sets forth a number of alleged similarities: in subject matter, being the story of a black neer-do-well who transports a moralistic black woman and a brood of children from one place to another in a vehicle; and specific expression, such as the use in both "Bustin' Loose" and "Easy Money" of a peaceful interlude by a lake to bring the man and woman closer together, the presence in both works of a conflict pitting the man and woman against a pair of criminals in which the woman saves the man from danger by destroying the valuable object sought by the criminals, and the fact that both works end with the man, woman and children starting a new life together in a rural setting.

Defendants have moved for summary judgment on the copyright claim, contending that, as a matter of law, "Bustin' Loose" does not infringe plaintiff's copyright since there is no substantial similarity between the two works. Both access and ownership are conceded for purposes of this motion. Overman's 1977 screenplay was the product of numerous revisions of an earlier work originally authored by Overman and two others in 1971. The two co-authors, Irving Cowley and Connie Blackwell, transferred all of their ownership rights in the 1971 draft to Overman in

October of 1971. This draft was not copyrighted until April of 1983. While defendants argue that only those aspects of Overman's screenplay that originated with the 1977 version should be considered, they claim that even if the entire "Easy Money" screenplay is examined, there is no actionable similarity between "Bustin' Loose" and any of the protectable aspects of plaintiff's work.

Assuming the Court grants summary judgment on the copyright claim, defendants also seek dismissal of the pendent state law claim for fraud on jurisdictional grounds.

Overman opposes the summary judgment motion and in addition, has moved for leave to file an amended complaint and to add parties plaintiff. These motions are apparently addressed to the defendants' arguments that the 1977 screenplay constitutes a derivative work and that only those portions original to the 1977 version can be used as a basis for this action. Plaintiff alleges in his proposed second amended complaint that both the 1971 and 1977 drafts of "Easy Money" have now been copyrighted and that both copyrights have been infringed by "Bustin' Loose."

Although the Court is inclined to deny plaintiff's motion for leave to amend the complaint to add parties plaintiff because of plaintiff's delay in bringing the motion and the resultant prejudice to defendants, those issues need not be decided at this time. Since defendants' summary judgment motion addresses both plaintiff's original work (the subject of the proposed amended complaint) and his derivative work (the subject of the original complaint) both works are before the Court and have been considered.

The Court issued a tentative ruling and heard argument on both parties' motions on July 25, 1983 and thereafter took the matter under submission. Defendants filed a supplemental brief in support of its motion on August 17, 1983. In response to concerns raised by the Court at oral argument, defendants indicated in their supple-

mental brief that they would stipulate to tolling of the statute of limitations on plaintiff's state law claim for fraud. Having thoroughly examined the exhibits filed by both sides, including reading plaintiff's screenplays and defendants' script in addition to viewing a video tape recording of defendants' film, and having reviewed all the relevant authorities including those presented informally in letters to the Court subsequent to the hearing, the Court grants defendants' motion for summary judgment and dismisses the pendent fraud claim.

### A. *Applicable Standard.*

■ In general, summary judgment should only be granted where there is no genuine issue of material fact. *See, Garter-Bare Co. v. Munsingwear, Inc.*, 622 F.2d 416 (9th Cir.1980); 6 Moore's Federal Practice § 56.17(14) n. 5. In this case, the basic facts are not in dispute. The defendants concede for the purposes of this motion that they had access to the plaintiff's screenplay. Additionally, defendants appear willing to assume that plaintiff's work is validly copyrighted. Both the allegedly infringing work and the plaintiff's work (original as well as derivative) are before the Court and there is no dispute as to their authenticity. Thus, the only question left for resolution is whether, as a matter of law, defendant's movie is substantially similar to plaintiff's screenplay. Even though the issue of similarity is factual, when only one jury verdict could be upheld, summary judgment is appropriate. *See, e.g., Jason v. Fonda*, 698 F.2d 966 (9th Cir.1982), *aff'g* 526 F.Supp. 774 (C.D.Cal.1981); *Smith v. Weinstein*, 578 F.Supp. 1297 (S.D.N.Y. 1984); *McMahon v. Prentice-Hall, Inc.*, 486 F.Supp. 1296 (E.D.Mo.1980).

In *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977), the Ninth Circuit articulated a bifurcated test for infringement according to which substantial similarity in ideas is analyzed by extrinsic criteria and substantial similarity in expressions by intrinsic appraisal. 562 F.2d at 1164. Although some courts and commentators have read *Krofft* as precluding summary resolution of copyright claims when the inquiry focuses on expression of ideas, *see, e.g., Miller v. CBS, Inc.*, 6 Med.L.Rptr. 1859, 1860 (C.D.Cal. 1980); 3 Nimmer on Copyright, § 13.03(E) n. 121.4a, recent decisions in *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983), and *Jason v. Fonda*, 698 F.2d 966 (9th Cir. 1982), make clear this is not the case. In *Jason*, for example, the Ninth Circuit affirmed summary judgment for the defendant based on a finding that despite being concerned with the same general theme, there were substantial differences in the treatment by plaintiff's book and defendants' movie of the basic idea. 526 F.Supp. at 777. In *See v. Durang*, the Court upheld summary judgment for the defendant on the ground that, although the basic ideas were the same, no reasonable trier of fact could find the forms of expression substantially similar. 711 F.2d at 143.

In this case, plaintiff's claim is deficient in both respects. There is neither substantial similarity in the basic idea of plaintiff's "Easy Money" and defendants' "Bustin' Loose," nor is there similarity in overall impact, feel and effect. Defendants are therefore entitled to summary judgment.

### B. *Similarity of Ideas.*

■ To determine whether there is any substantial similarity in the ideas used in the competing work, the Court applies an extrinsic test. *Krofft*, 562 F.2d at 1164; *Jason*, 526 F.Supp. at 777. Under this test, the Court may examine such criteria as the nature of the plot, characters, themes and dialogue of the two works. *Jason*, 526 F.Supp. at 777. Both works at issue here involve a black man involuntarily thrown together with a black woman and children on a journey. Both involve a certain amount of comedy related to the presence of the children. However, there are substantial differences between the plots, characters, sequences, themes, dialogue and feel of the two works. "Easy Money" is an earthy and heavily ethnic story. It has scenes of anger, violence and death.

"Bustin' Loose," on the other hand, is generally light-hearted and bland. No one is killed. The humor relating to the children is more vulgar in "Easy Money," more prankish in "Bustin' Loose." The male character in "Bustin' Loose" got enticed by the mob to take a briefcase of contraband to Chicago using the woman and her three children as cover. The male in "Bustin' Loose" went in the opposite direction, already being a crook and being enticed by his probation officer to escort the latter's girlfriend and eight orphans—not her children—to the West Coast. To the extent that both are rogues with redeeming virtue, the character is not protectable. The females in each are totally different in character and development. Annie Mae in "Easy Money" is earthy, not all that attractive although very physical, uneducated and crass. Vivian, on the other hand, is classy, educated, attractive but not overtly physical, and "put together." Annie Mae's motive for going to Chicago differs significantly from Vivian's motive in going to Washington.

The basic tone and feel of "Bustin' Loose" is a light-hearted and sentimental comedy in which an educated urban black woman falls in love with a street-wise but loveable petty criminal after a cross-country adventure. The basic impression of "Easy Money" is an earthy and sometimes violent comedy in which an uneducated but strong-willed rural black woman falls in love with a street-wise black man following a cross-country adventure. As a matter of law, these ideas are not substantially similar.

### C. *Similarity of Expression.*

■ The Court's task in reviewing the competing works for substantial similarity of expression is to determine whether any reasonable trier of fact could find that such similarity exists as to all or part of the works. Under *Krofft*, this determination is to be made intrinsically, by simply reading and viewing the works themselves and considering the response of the ordinary, reasonable person. 562 F.2d at 1164. Dissec-

tion of the characters, scenes and plot is not appropriate. *Id.*

■ Following the guidelines of *Krofft*, the Court concludes that no reasonable trier of fact could find a substantial similarity of expression between "Easy Money" and "Bustin' Loose." The "total concept and feel" of the two works is entirely different. Extrinsic analysis aside, it is impossible to read plaintiff's screenplays and defendants' continuity or to view defendants' film and conclude that defendants "wrongfully appropriated something which belongs to the plaintiff." *Id.* at 1165, *quoting, Arnstein v. Porter,* 154 F.2d 464, 472–73 (2d Cir. 1946), *cert. denied,* 330 U.S. 851, 67 S.Ct. 1096, 91 L.Ed. 1294 (1947). Recognizing that differences in medium from the screen to the screenplay might affect the overall presentation, the Court has been careful to base its impressions on comparisons of defendants' continuity to plaintiff's screenplays as well as of defendants' film to plaintiff's screenplays. Regardless of which form of defendants' work is considered, the result is the same.

The analytical discussion offered by plaintiff does not persuade the Court otherwise. In both his First Amended Complaint and his proposed Second Amended Complaint, plaintiff enumerates 19 points of alleged similarity among his underlying and derivative works and defendants' screenplay. *See,* First Amended Complaint at 4–7; proposed Second Amended Complaint at 5–8. Of these, points A, B, G, H and M, relating to the basic story line and the general development of the characters and their relationships, involve only unprotectable abstract ideas, and not expression. Some of the other alleged similarities, points D, I, J, and S, fall under the category of "scenes a faire," forms of expression which are either stock scenes or which flow necessarily from the elements common to the two works. *See, See v. Durang,* 711 F.2d 141, 143 (9th Cir.1983). Still other claimed similarities, points C3, C4, E, K, L, N and O simply do not exist. All of the scenes or characters mentioned in these points are clearly distinct as among the

competing works either with respect to their expression or as to their function or role within the particular work. The remaining alleged similarities, points C1, C2, F, P, Q and R, are somewhat similar but not so similar as to support plaintiff's copying claim. *See, id.* The use by defendants of these few isolated similar character traits and scenes does not give rise to a copyright infringement. *See, Midas Productions, Inc. v. Baer,* 437 F.Supp. 1388, 1389 (C.D.Cal.1977). In sum, none of these asserted similarities is significant in and of itself, and taken as a whole, the overall impact and effect is totally different.

Moreover, there are substantial differences in expression between plaintiff's works and defendants' screenplay. The character of Donald in defendants' movie is totally absent from plaintiff's works as is the element of rivalry for the woman's affections. The interplay between Stax and Annie Mae is central to plaintiff's story whereas in defendants' film the triangular relationship among Vivian, Donald and Braxton is crucial. The "bad guys" in defendants' movie are primarily comical figures who never kill anyone nor are they killed themselves. In plaintiff's works, on the other hand, the "bad guys" are much more sinister and they succeed in killing some characters before the hero kills them. Finally, in plaintiff's works, the central figures rely solely on their own resources in avoiding catastrophe while in defendants' movie they are saved, after all else fails, by the generosity of others. Thus, the basic "lesson" of the works is completely different.

Viewing plaintiff's works and defendants' work in their entirety, the Court concludes that there is no substantial similarity in the protectable expression of the works as a matter of law. Summary judgment is appropriate on this issue because the facts are undisputed and the Court is satisfied upon reviewing the works that reasonable minds could not differ as to the absence of substantial similarity of expression. *See v. Durang,* 711 F.2d at 143.

In view of the conclusion that there is no substantial similarity between defendants' work and either plaintiff's original or derivative work, it is unnecessary to consider whether plaintiff's protection is limited to new matter in the derivative work.

**D.** *Dismissal of the Pendent Claim.*

 While recognizing that the Court has discretion to retain jurisdiction of plaintiff's pendent state claim for fraud, this is not an appropriate case for the exercise of that discretion. The possibility that plaintiff may face a statute of limitations barrier to pursuing his claim in state court may, in some cases, weigh in favor of exercising pendent jurisdiction. *See, Stein v. Reynolds Securities, Inc.,* 667 F.2d 33, 34 (11th Cir.1982). Here, however, defendants have stipulated that plaintiff's filing of the fraud claim in federal court has tolled the statute of limitations. Thus, dismissal by this Court will not prevent plaintiff from seeking relief in the California courts. Since the Court has not already familiarized itself with the legal and factual bases of plaintiff's fraud claim and since no federal interests would be served by this Court's resolution of this state law issue, the Court concludes that dismissal without prejudice is appropriate. *See, Jason v. Fonda,* 698 F.2d 966, 967 (9th Cir.1982).

IT IS THEREFORE ORDERED that:

1. Defendants' motion for summary judgment on the copyright claim is granted both as to plaintiff's First Amended Complaint and as to the proposed Second Amended Complaint;

2. Plaintiff's claim for fraud is dismissed without prejudice for want of jurisdiction;

3. Defendants are entitled to recover their costs in this action from plaintiff in an amount to be determined by the Clerk upon application by defendants;

4. Defendants shall prepare an appropriate judgment, including the amount of costs to be awarded, if any.