Fred SANFORD, Plaintiff,

v.

CBS, INC. and Rose Records, Inc., Defendants.

No. 83 C 3373.

United States District Court, N.D. Illinois, E.D.

Oct. 5, 1984.

See also D.C., 594 F.Supp. 711.

Jerold A. Jacover, Cynthia A. Homan, Willian, Brinks, Olds, Hofer, Gilson-Lione, Chicago, Ill., for plaintiff.

James A. Klenk, Charles C. Post, Reuben & Proctor, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff alleges in this copyright infringement suit that Michael Jackson ("Jackson") copied plaintiff's song "Please Love Me Now" when Jackson composed the song "The Girl Is Mine." Presently before the Court are plaintiff's five motions in limine. For the reasons set forth below, the second and third motions are granted, the first and fourth motions are denied, and the fifth motion is moot.

### Motion #1

Plaintiff's first motion in limine asks the Court to strike the clarifications which Michael Jackson added to his deposition transcript before signing it. Although Fed.R.Civ.P. 30(e) allows a witness to make "any changes in form or substance" to the transcript, it also requires a statement of the reasons given by the witness for making them. Jackson failed to record any reasons for making the changes, so plaintiff argues that the clarifications are improper and should be stricken. Jackson's noncompliance with Rule 30(e) does warrant some remedial action, but the changes need not be stricken.

A thorough discussion of the case law and policy considerations relating to Rule 30(e) is found in *Lugtig v. Thomas*, 89 F.R.D. 639 (N.D.Ill.1981). In *Lugtig*, Judge Will first noted that Rule 30(e) allows witnesses to make any changes they desire, even if the changes contradict the original answers or even if the reasons for making the changes are unconvincing. *Id.* at 641. Moreover, the Rule does not require a judge "to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes." *Id.*

However, a witness who "wishes to invoke the privilege accorded deponents by

Rule 30(e) ... must comply with the instructions which the Rule gives for making changes in deposition testimony." *Id.* It is not enough for the witness to give general conclusory reasons for all the changes at the end of the transcript—or, as in this case, for the witness to record no reasons at all upon the deposition but merely to claim later that the reasons are "either explicit or reasonably implied from the circumstances." Defendants' Response to Plaintiff's Motion in Limine No. 1, p. 7. Instead, the witness must state the specific reason for the particular change after *each* modification. Accordingly, a deposition lacking these explanations must be amended at the defendant's expense "so that the original answer, the changed answer, and the reason for the change will appear after every question affected by the changes." *Lugtig,* 89 F.R.D. at 641. Jackson's non-compliance with Rule 30(e) is even greater than that of the witness in *Lugtig,* who at least gave a general explanation for the changes he made in his deposition transcript. Thus, although plaintiff's motion to strike the changes is denied, the defendants shall be required to amend the transcript at their expense so that Jackson's specific reasons appear for every change.

One other remedial measure is in order. If the changes made in a deposition under Rule 30(e) make the deposition incomplete or useless without further testimony, the party who took the deposition can reopen the examination. *Id.* at 642; *Allen & Co. v. Occidental Petroleum Corp.,* 49 F.R.D. 337, 341 (S.D.N.Y.1970). "Deposing counsel can ask questions which were made necessary by the changed answers, questions about the reasons the changes were made, and questions about where the changes originated, whether with the deponent or with his attorney." *Lugtig,* 89 F.R.D. at 642; *see also Erstad v. Curtis Bay Towing Co.,* 28 F.R.D. 583 (D.Ma. 1961). In this case, Jackson has made numerous changes in his deposition, many of them differing significantly from his original testimony. If plaintiff wishes, he may therefore reopen the deposition to cross-examine Jackson, on a date at least six weeks before the trial, about why Jackson made the changes and how his memory improved. Should plaintiff choose to reopen the deposition, defendants will bear the related costs and attorney's fees. *Id.*

### Motion # 2

■ Plaintiff's second motion in limine requests the Court to order that the depositions of Michael Jackson and Larkin Arnold are not subject to a protective order and thus may be used freely at trial and for pretrial preparation. This motion is granted.

The Court entered a protective order in this case, agreed to by the parties, on March 2, 1984. Plaintiff argues that defendants have failed to follow the procedures necessary to be covered by this order. Paragraph 5 of the protective order requires the party seeking protection to:

(1) notify all parties within ten days of completion of a deposition that the deposition contains protected matter; and

(2) designate specific portions of the deposition transcript which are deemed to be protected matter within thirty days of its receipt by the deponent.

Plaintiff contends that defendants satisfied the first, but not the second, requirement with respect to Larkin Arnold's deposition. Arnold was deposed on February 23, 1984, and defendants notified plaintiff the next day that Arnold's deposition contained protected matter. However, defendants failed to specifically designate within thirty days the portions of Arnold's deposition deemed to be protected. In fact, plaintiff asserts (and defendants do not deny) that defendants have *never* complied with this requirement. Thus, Arnold's deposition is not subject to a protective order.

The dispute over Michael Jackson's deposition is not resolved so easily. Plaintiff claims that defendants satisfied neither notice requirement, while defendants claim they met both. On March 13, 1984, Jackson's deposition was adjourned after two days of testimony. On April 18, 1984,

Jackson's attorneys gave notice that they considered *all* of Jackson's testimony protected matter. Plaintiff contends that this notice was approximately one month late, and that because the protective order's ten-day limit was not met, Jackson's testimony is not protected.

At first glance, plaintiff's contention seems valid. However, defendants argue that when the deposition was adjourned on March 13, they had good reason to believe that plaintiff's counsel would resume Jackson's deposition. Defendants therefore thought that the deposition had not been completed, and that the protective order's ten-day notification provision did not yet apply. The transcript of the last few pages of the deposition supports defendants' argument. Plaintiff's attorney stated, "At this time, I am going to adjourn the deposition. I reserve the right to come back and recall this witness based on your refusals to let him answer questions which I believe are proper and your response to the subpena [sic] in which relevant and pertinent information was not produced." Jackson deposition, p. 265. The lawyers then discussed the possibility of resolving their disagreements and continuing Jackson's deposition, finally deciding that plaintiff's counsel would talk to Jackson's lawyer about doing so after he received a transcript of the deposition taken so far. *Id.* at 266. Jackson's attorneys thus gave the April 18, 1984 notice after waiting a reasonable time for plaintiff's counsel to obtain a deposition transcript and to contact them. Given the contribution of plaintiff's counsel to the confusion about whether the deposition had been completed, it would be unfair to hold defendants to the ten-day limitation in these circumstances.

Plaintiff also argues that defendants have failed to specifically designate which portions of Jackson's deposition are deemed to contain protected matter. Defendants claim that their letter of April 18, 1984—which stated that they considered

*all* of Jackson's testimony to be protected matter—satisfied this procedural requirement. Plaintiff disagrees, pointing out that the purpose of the two-tiered protective order in the first place was to prevent blanket restrictions covering both confidential and non-confidential matter. Furthermore, plaintiff contends, the requirement that the party seeking protection identify which specific portions of the transcripts are deemed confidential permits any later disagreement concerning protected matter to be sharply focused.

Plaintiff's argument is persuasive. Defendants' simply claiming that all of Jackson's testimony is confidential is inconsistent with the procedures agreed to by the parties, as well as with the general principle that protective orders must be narrowly drawn and precise. *See, e.g., Carroll v. President and Commissioners of Princess Anne,* 393 U.S. 175, 183, 89 S.Ct. 347, 352, 21 L.Ed.2d 325 (1968); *In re Halkin,* 598 F.2d 176, 191 (D.C.Cir.1979). Moreover, it is belied by the fact that much of the information in Jackson's deposition has already been released to the public by Jackson or the defendants themselves. In their response briefs, defendants and Jackson still have not identified any particular information which is confidential. They refer generally to such subjects as the provisions of Jackson's contract with CBS and Jackson's creative process of composing songs. However, plaintiffs demonstrate that information about even these topics has appeared in publications such as *Time* and *Rolling Stone.* Thus, defendants' failure to specifically designate the confidential portions of Jackson's deposition testimony precludes defendants from claiming that the deposition is subject to the Court's March 2, 1984 protective order.[1] Accordingly, plaintiff's second motion in limine is granted.

### Motion #3

■■■ In this motion, plaintiff seeks an order excluding all actual and potential wit-

---

1. Defendants and Jackson are not prevented from seeking some additional protection for any portions of the deposition which really are con-

fidential. This right is expressly reserved in Paragraph 8 of the protective order.

nesses, other than plaintiff and a bona fide representative of defendants, from the courtroom during all proceedings relating to the trial of this case other than the period of actual testimony by each witness. The motion is granted.

Rule 615 of the Federal Rules of Evidence provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses...." This rule is mandatory—a trial judge may not deny a request to exclude. *E.g., United States v. Ell,* 718 F.2d 291, 292 (9th Cir.1983); *see also* Advisory Committee Notes to Rule. Accordingly, plaintiff's motion is granted.

### Motion #4

Plaintiff's fourth motion in limine asks the Court to exclude at trial any evidence relating to how "The Girl Is Mine" differs from "Please Love Me Now." Plaintiff claims that such evidence is improper as a matter of law, and that its introduction before the jury would be unfair and prejudicial. However, plaintiff has misstated the law in this area, and his motion is denied.

In support of his argument, plaintiff cites Judge Learned Hand's oft-quoted statement that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir.1936), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). The Second Circuit in *Sheldon,* however, did *not* rule that evidence of differences between the copyrighted and accused works was inadmissible as a matter of law. None of the other three cases cited by plaintiff stand for this proposition either. The cases do emphasize that the trier of fact should focus on the overall similarities between the works rather than on the minute differences between them, but they do not suggest that the differences should be disre-

garded completely. *See, e.g., Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 618 (7th Cir. 1982), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). Indeed, the Seventh Circuit recently noted that it is often necessary to closely analyze the differences *and* similarities between the two works in order "to reach a general, subjective conclusion regarding substantial similarities." *Id.* at 614 n. 6.

Defendants are therefore correct in asserting that the well-established case law is contrary to plaintiff's argument. There are, in fact, numerous cases in which courts have expressly considered the differences between the copyrighted and allegedly infringing works. *See, e.g., See v. Durang,* 711 F.2d 141 (9th Cir.1983); *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905 (2d Cir.1980); *Reyher v. Children's Television Workshop,* 533 F.2d 87 (2d Cir. 1976), *cert. denied,* 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976); *Jason v. Fonda,* 526 F.Supp. 774 (C.D.Cal.1981), *aff'd,* 698 F.2d 966 (9th Cir.1982).[2] As the court explained in *Warner Bros. Inc. v. American Broadcasting Companies, Inc.,* 654 F.2d 204, 210–11 (2d Cir.1981), significant differences between two works will not always preclude a finding of substantial similarity. The trier of fact should focus on the similarities, not the differences. Nevertheless, numerous differences tend to undercut the likelihood of substantial similarity and are thus relevant considerations. *See also* 3 M. Nimmer, *Nimmer on Copyright* § 13.03[B] at 13–42 and 13–43 (1984). Thus, plaintiff's motion to exclude all evidence of differences between the two songs is denied.

### Motion #5

In this motion, plaintiff originally asked the Court to exclude defendant's Exhibit No. 3 from being introduced into evidence. This exhibit was a *copy* of a cassette tape

---

**2.** Plaintiff's attempt to distinguish these and the other cases cited by defendants is unpersuasive. He also argues that none of defendants' cases involved a jury trial—a "crucial" distinction. However, plaintiff fails to cite any authority supporting this argument or to explain convincingly why a jury should be prevented from hearing evidence which is admissible before a judge in a bench trial.

which Michael Jackson may have used in composing "The Girl Is Mine." Plaintiff opposed the use of the copy rather than the original, which plaintiff believed might contain erasures, deletions and other information damaging to defendants' version of the facts, and which plaintiff claimed the defendants were wrongfully refusing to produce. On June 27, 1984, defendants told plaintiff that the apparently lost or destroyed tape had been found. Thus, plaintiff has now withdrawn his motion to exclude DTX 3.

Plaintiff still seeks costs and attorney's fees, however, because he claims defendants' negligence or other inexcusable conduct in this matter put him to substantial expense. Defendants also ask for their costs and fees, asserting that this motion was "frivolous and a bald attempt to use this litigation as a vehicle for unfounded, scandalous attacks on defendants." Because it is not clear that either party should bear all the blame—and the costs—in this instance, both requests are denied.[3]

Accordingly, plaintiff's second and third motions are granted, the first and fourth motions are denied, and the fifth motion is moot. The parties' requests for attorney's fees and costs are denied. It is so ordered.

---

**3.** Likewise, the similar requests included in the briefs accompanying the other motions in limine are denied.